Tracy *a.* Talmadge.

---

TRACY *a.* TALMADGE.

*Supreme Court, First District; General Term, May,* 1855.

GENERAL AND SPECIAL TERM.—RECEIVERS.

There is but one Supreme Court, whether the judges holding it be at general or special term, and powers conferred by statute may be exercised by the court at either term, unless there be some statute specially restricting the power of the court.

Where, under an order of special term, that the report of referee be confirmed, unless cause to the contrary be shown within eight days, a party filed exceptions to the referee's finding, and an order was entered that all the proofs and testimony taken before the referee come before the court on the hearing of the exceptions, and the cause was placed on the general term calendar for hearing, a motion that it be struck off, on the ground that it should be heard in the first instance at special term, was denied.

The motion to set aside the report of the referees might properly be made, either at special or general term, according to convenience.

A receiver appointed in an action commenced in Chancery and continued in the Supreme Court in Equity, has the powers and is subject to the obligations and duties declared in *Rev. Stats.* 469, § 68 ; but a rule appointing referees, to which such receiver gives his assent, should be entered, not in the common law courts, as there required, but in the Court of Equity by which he was appointed, and any appeal from the decision of the referees is to be heard there also.

Motion to strike cause from the calendar.

This action was commenced in Chancery against the North American Trust and Banking Company. A receiver was appointed and a decree made, dissolving the corporation, as insolvent.

Subsequently, the cause being continued in the Supreme Court in Equity, the Bank of Liverpool presented a claim, and an · order was entered appointing referees to examine and report concerning the same. Their report was filed in the same court, and the counsel for the claimant filed exceptions to the report, and moved at general term to set it aside.

On the hearing of the motion, although both parties had placed the cause upon the general term calendar, the counsel of the receiver moved to strike it off the calendar, upon the ground that it must first be heard at special term.

*H. P. Dodge*, for receiver.

*Charles Edwards*, for claimants.

MITCHELL, C. J.—An order was made in the above cause by the Chancellor, 31st August, 1841, appointing a receiver of the property of the Bank, and a decree was made by him on 19th June, 1843, dissolving the corporation. The Bank of Liverpool after that presented its claim against the banking company, and an order of this court, sitting in equity, was made 31st January, 1849, appointing referees to examine into the claim, and to report upon the validity and amount thereof to this court, that is, to the same court in equity. The referees made their report on 2d June, 1853, and on the motion of the attorney for the receiver, an order was entered at special term in equity, and under the above title, that the report

be confirmed, unless cause to the contrary should be shown in eight days. The claimants then filed exceptions, and an order was entered October, 1853, at special term, that all the proofs and testimony taken before the referees come before the court on the hearing of the exceptions, in the shape of a special report of referees, or in the form of a case. All the above orders were made under the above title, and in equity : none of them in the matter of the claim of the Bank of Liverpool *vs.* Leavitt, receiver, as would be proper, if the reference were under the statute as to insolvents.

The cause has been placed on the general term calendar by both parties since the last order was made, and is now reached in its order, and the counsel for the receiver moves to strike it from the calendar, on the ground that it must first be heard at special term.

The constitution does not prescribe what are the respective duties of the special term, and the general term. The judiciary act and the Code in some few instances have directed that certain matters should be heard at the one term, and some at the others ; but neither of those statutes, nor any other statute has laid down any general rule defining the specific duties of the Supreme Court at either of those terms.

By the Code of 1849, it was understood that a bill of exceptions from the circuit could be heard only at the general term, and not at the special. By the amendment made in 1851 (§ 265), motions for a new trial, not only on bills of exceptions but on a special verdict, or case reserved, or case made, were to be heard at the special term only, unless the justice trying the cause should direct it to be heard in the first instance at the general term.

The amendment in 1852 directed these motions to be heard first at the circuit or special term, except that when exceptions were taken, the judge trying the cause might direct the motion to be heard first at the general term—and that when questions of law only were presented by the case made at the trial, the judge trying the cause might make a like order (§ 265). The same rule probably applied to trials by the court under the law of 1851, (§ 268); but in 1852, section 268 was so amended that the review was to be at the general term only.

This variableness in the law, and this want of uniformity of purpose at any one time, as to the class of cases to be heard at either term, show that there was never any definite purpose in our legislature that all matters in the nature of an appeal should be first heard at the general term, or that all matters not of that character should be heard at the special term only.

There is but one Supreme Court, whether the judges holding it be at general or special term: and powers which by statute are granted to the Supreme Court, may be exercised by the court at either term, unless there be some statute specially restricting the court. The practice has conformed to this view. The motions to confirm the report of commissioners on opening streets were frequently, if not generally, made at first at the general term, and continued to be so made until the court finding that they occupied too much of the time of the general term, directed them to be heard at special term: and there was some reluctance at first to comply with this order, under the apprehension of counsel that the general term only had jurisdiction of these motions. So the general term has granted a mandamus, and the special term has quashed it, as not containing in its face any cause of action, and so being improvidently issued. If the special term should seem to any to have gone beyond the principle of a rule lately adopted, that the special term shall not open a default entered at the general term, the case shows, what alone is material to this case, the powers of the general term. Writs of error in criminal cases are to be heard before the Supreme Court. (2 *Rev. Stat.*, 741, § 24). They are always heard at general term. When for any reason any convict sentenced to the punishment of death, has not been executed pursuant to sentence, and the same still stands in force, " the Supreme Court" is to cause him to be brought before the court, and if no legal reasons exist against the execution of the sentence, they are to sign the warrant for the execution at some future day. (2 *Rev. Stat.*, 659, §§ 23, 24). Such a case has occurred in this district, and the matter was heard at general term. Motions to set aside the award of arbitrators, and to set aside the report of referees, were always made at the general term, and in the class of enu-

merated motions, when founded on the merits. The general term, under the old system, had the power to hear this case, and all others of the like kind, and there is no law taking any such power from it; it must therefore remain with it.

The receiver in this case was appointed under sections 40, 41, 42, of 2 *Rev. Stats.*, 464. The last section gives him all the powers and authority conferred, and declares him subject to all the obligations and duties imposed (in Art. 3 of that title, viz. : pt. 3, ch. 8, tit. 4), upon receivers, appointed in case of the voluntary dissolution of a corporation. The title referred to, is 2 *Rev. Stats.*, 469, § 68, and declares that the receiver shall have all the power and authority conferred by law upon trustees, to whom an assignment of the estate of insolvent debtors may be made, pursuant to the provisions of ch. 5 of part 2 of the *Rev. Stats.* The whole of ch. 8, of part 3, of the *Rev. Stats.*, (except titles 2 and 12); and also, ch. 5, of part 2, of the *Rev. Stats.*, are retained by § 471, of the Code. Ch. 5, part 2, of the Revised Statutes (2 *Rev. Stats.*, *p.* 45, § 19, *&c.*), contains provisions for the reference of claims of creditors of an insolvent, when a controversy arises between such creditors and the trustees of the insolvent, and directs the matter to be referred to those persons who may be agreed upon by the trustees and the opposite party, in writing : or to be selected otherwise, as the act directs. The written agreement (by section 23), is to be filed in the office of the clerk of the Supreme Court, when the trustees were appointed for concealed or nonresident debtors, under Art. 1 of that chapter ; or in the court of Common Pleas, when the trustees were appointed under any other article of that title; and a rule was thereupon to be entered, appointing the persons so selected to determine the controversy. Those referees have the same powers and are subject to the like rules and obligations as referees appointed by the Supreme Court, in personal actions ; and their report is to be filed in the same office where the rule of their appointment was entered, and is conclusive on the parties, if not set aside by the court. (2 *Rev. Stats.*, 45, §§ 23, 24, 25).

It is doubtful whether these provisions can strictly apply to proceedings under this law. The section last quoted provided for referees only in two cases; one when the trustees were

appointed under one article of the insolvent law, and the other when they were appointed under the other article of the same law, and requires the referees to be appointed by rule in the common law courts, not in the Court of Chancery; and that they determine the controversy (§ 23). Under those sections it is essential that the trustees enter the rule of reference in the Supreme Court or the Court of Common Pleas, according as they are appointed, under one article of the law, or the other. The receiver is not appointed under either article, and so cannot strictly comply with either. But as the proceeding under which he is appointed, and the analogous ones under which he derives his powers, are both instituted in the Court of Chancery, (2 *Rev. Stats.*, 462, § 31, *and* 467, § 58, *&c.*), and he thereby becomes an officer of that court, and amenable to its control, it is fairly to be inferred, that the order for a reference to which he gives his assent is also to be made in the same court; and any appeal or exception to be taken from the decision of the referee is to be heard there also, and according to its rules.

Such was the understanding of those who have heretofore had charge of this cause, and they entered the order of reference in equity and not on the law side of the court, in January, 1849, and filed the report, and entered an order of confirmation *nisi;* and to that report, in due time, the complainant filed his exceptions. The mode of entitling all the papers conforms to this view. It can hardly be doubted, that under the old system the Chancellor and not the Supreme Court or Court of Common Pleas, would be the proper tribunal to hear this matter in controversy.

The slight exposition above made of the respective duties of the special term and general term, show that there is nothing necessarily to prevent the motion to set aside the report of the referees from being heard at either term. It is a matter of convenience only. Here it is understood that both parties mean to go to the Court of Appeals, so that they must come here now or at some other time. If the analogy of the Code is followed, the report of the referees may be considered as so far binding that the only appeal from it is to the general term.

Under the circumstances, it is most convenient to have the case heard at general term, without sending the parties first to the special term. The motion to strike the cause from the calendar is therefore denied.