By the Court.*—Hogeboom, J.
—This case presents the question whether a corporation may recover back usurious premiums paid by it on the loan or forbearance of money. It involves the construction of the act of 1850, which is as follows : “Ho corporation shall hereafter interpose the defence of usury in any action.” (Laws of 1850, ch. 172, sec. 1.) Our statute forbids any person or corporation, directly or indirectly, to take any greater sum than at the rate of seven per cent, per annum for *459 the loan or forbearance of money (1 Rev. Stats., 771-2, sec. 1,2); and, as a consequence of, or penalty for, the violation of this statute, authorizes any person paying such larger sum to recover back such excess, if the action be brought within one year after the payment (sec. 37). The benefit of this latter section (prior to the act of 1850) probably attached to corporations. Although it is observable that the second section, which forbids the taking of usury, uses both the words “ person” and “ corporation,” and extends the prohibition to both; whereas the third section, which authorizes a suit to recover back the usury, uses only the word “ person,” and not corporation.” Subsequent sections of the statute declare void all bonds, notes, contracts, and evidences of debt, reserving any usurious premium (sec. 5), authorize the prosecution thereof to be restrained by injunction (sec. 14), and make the taking of usury a misdemeanor (sec. 15). In this shape the statute against usury, as amended in 1837, remained until the act of 1850 was enacted, which simply provided that “ no corporation should thereafter interpose the defence of usury in any action.” This statute, like every other of general application, should receive a construction in accordance with the intent of its framers, and in furtherance of the object sought to be accomplished. It was probably intended, in part at least, for the benefit of corporations, to enable them to obtain, in critical emergencies, pecuniary facilities for the promotion of the objects of their incorporation. They are forbidden to interpose the defence of usury; and therefore, when prosecuted upon a usurious contract, they were bound to pay, or suffer judgment against them. And I think the fair construction of the statute is, that, they were bound to pay, not only the sum actually borrowed, with legal interest, but also the usurious premium. The law creates no distinction between the sum actually borrowed, with interest, and the excess over seven per cent. It declares that they shall not interpose the defence for any pv/rpose. What they have agreed to pay, they must pay. The contract is made legal as to them by removing every legal obstacle to a recovery against them. Hence evidences of debt securing or reserving as against them, what would otherwise be a usurious premium, are not void or illegal, but are lawful, and the whole amount may be recovered in an action. If so, then I think it cannot subsequently be recovered back. It would contravene well- *460 settled principles and all legal simplicity, first to allow a recovery of the usury, and then to allow it to be immediately recovered back. I do not understand that the law allows such a thing to be done. How, in the case of natural persons, as to whom the laws against usury are in nowise repealed or modified: they may recover back money actually paid by way of usury,. first, because the agreement to pay, and the act of payment, aré illegal transactions ; and secondly, because the law presumes that the urgency of their pecuniary necessities may have left them no practical option, except to obtain the money at.the time of the original loan on such terms as they could. But if actually prosecuted on the usurious contract, I know of no law or legal rule by which they may suffer a recovery, and then turn immediately round, and, by a prosecution on their part, get back money^s to which they had a legal and valid defence against its recovery when originally prosecuted. If these views are correct, they dispose of this case. If a suit for the usurious premiums could not be successfully defended, neither can they be voluntarily paid, or compulsorily collected, and then be restored to the party originally paying them, through the agency of a suit instituted for that express and only purpose. Such is this suit, and it must fail, for the reasons stated.
Again : the only just or legal foundation (prior to the statute of 1850) for the suit to recover back usurious premiums paid, was the illegality of the original transaction—the fact that the recei/pt of the money by the usurer was forbidden. But the statute of 1850, by prohibiting the defence, has removed the taint of usury. It is no longer, as to corporations, illegal'. It has become a lawful and proper transaction: hence the reason of the rule which allowed the action to recover back the money-fails. The illegality being removed, the foundation for the action no longer exists.
It is argued that this is giving the statute of 1850 a more extended meaning than was designed by its framers; that it was only intended to take away the defence of usury—to prevent the moidcmce of a contract otherwise valid—for that cause, and not to pronounce usury lawful, or to repeal the law which forbids it. It is argued, that full effect may be 'given to the statute of 1850, by preventing a party from defeating a contract on account of usury, or from setting it aside and cancelling it in a *461 court of equity: and that this is the more henign and equitable construction, and most consistent with the spirit of the law, inasmuch as it compels a party to do just what is equitable; to wit, to pay the money actually borrowed, and legal interest, and relieve him from what is inequitable, oppressive, and against the policy of the law.
But I do not find sufficient foundation in the phraseology of the law upon which to build such a construction. The language is general and unqualified. It takes away the defence, the objection of usury. It strikes it out of existence, and the ordinary consequences must follow. It not only disallows the defence, but it forbids it to be used in any way defensively—that is, to accomplish the same object by affirmative action; as, for example, in a proceeding to vacate or set aside a contract, as would be accomplished by strictly defensive action—-as, for example, in setting up the usury in an answer to an action upon the contract. If it goes this length—and it was rather conceded on the argument that it did—then I think it goes still further, and forbids not only a defence to an action for the usury or usurious premium, hut forbids an action to recover back the usurious premium. The money borrowed, the légal interest, and the usurious premium, are all mingled together in one transaction, form part of one single and indivisible contract; and when the statute says the defence of usury shall not he interposed to it, I think it means to each and every part of it— no' one part more than another: at least I feel bound to put that construction upon it, until the Legislature speak in more specific and discriminating terms.
I think this view of the statute of 1850 is taken in substance by all the judges in the Court of Appeals who delivered opinions in the case of Curtis a. Leavitt (15 N. Y. R., 9). (See opinion of Comstock, p. 85 ; of Brown, pp. 152-154; of Shank-land, p. 113; of Paige, pp. 228-230; of Selden, pp. 254, 255.)
The result is, that the complaint is radically defective, and cannot be sustained.- It becomes unnecessary, therefore, to consider the other question discussed on the argument—Whether the usurious transactions were set forth with sufficient particularity and precision to uphold the complaint as a pleading.
The order of the special term should be affirmed, with costs.

 Present, Davies, P. J., and Sutherland and Hogeboom, JJ.